## WILLIAM RATLIFF v. JOHN DAVIS.

1. PROBATE JURISDICTION : ACCOUNTS OF EXECUTORS, ADMINISTRATORS, AND GUARDIANS.—The Court of Probates has exclusive jurisdiction in the settlement of the accounts of executors, administrators, and guardians. See *Searles* v. *Scott*, 14 S. & M. 94; *Neylans* v. *Burge*, Ib. 201.

2. SAME : SAME : PROMISE TO ALLOW "A FAIR COMPENSATION" FOR COMMISSIONS. —A promise by a ward or distributee, to pay the guardian, executor, or administrator "a fair compensation" for his services, is a mere promise to pay what may be allowed by the appropriate tribunal, according to law : and hence, where such a promise was made, and there was no final settlement between the parties, of the accounts, the Probate Court alone can determine what commissions shall be allowed.

3. SAME : SAME : CHANCERY JURISDICTION : SETTLEMENT OF EXECUTORS' ACCOUNTS. —If a guardian, after the termination of his trust, execute a mortgage to his ward for a sum certain, as security for what may be due by him on a settlement of his accounts, he cannot, in a suit in equity to enforce the collection of the mortgage debt, have a settlement of his guardianship account, so as to use as a set-off, an alleged indebtedness of the ward to him : but he must proceed in the Probate Court, to have the accounts adjusted between himself and the ward.

4. SAME : SAME.—The obligation of a refunding-bond, is to refund a due proportion of the deficiency of assets to pay debts, which may afterwards be established against the estate. Whether there is a deficiency of assets, and the extent of it, can only be determined by a settlement in the Probate Court; and, therefore, a court of equity will not, where a refunding bond has been given, set-off against a claim of the obligor in the bond, his *pro rata* share of a debt established against the estate, until a deficiency of assets, and his consequent liability to refund, has been established by the Court of Probates.

5. HUSBAND AND WIFE : WHEN SURVIVING HUSBAND MAY COLLECT DEBT DUE THE WIFE : CASE IN JUDGMENT.—The surviving husband, when the wife has left no

issue, may maintain a suit in equity in his individual name, to collect a mortgage debt due to the wife by her former guardian, when there are no subsisting debts against her; and the guardian will not be permitted to show that there will be an indebtedness of the ward to him, on a future settlement of his accounts, to defeat the husband's suit.

APPEAL from the Chancery Court of Rankin county. Hon. John Watts, chancellor.

*W. C. Harper*, for appellant.

*W. P. Harris*, for appellee,
Cited *Servis* v. *Beatty*, 32 Miss. R. 83; *Wood* v. *Ford*, 29 Id. 57; *Farve's Heirs* v. *Graves and Wife*, 4 S. & M. 711; *Fairly* v. *Thompson*, 34 Miss. R. 101.

HANDY, J., delivered the opinion of the court.

This suit was commenced by a bill filed in the Court of Chancery of Rankin county, by the appellant, to foreclose a mortgage executed by the appellee on the 26th March, 1857, to secure a debt of one thousand dollars therein acknowledged to be due by him to Margaret A. Lucy. The bill showed that the appellant intermarried with Margaret A. Lucy, after the date of the mortgage, and that she subsequently died, leaving no children nor descendants, and the appellant surviving her, who thereby became entitled in law to the benefit of the mortgage.

After a demurrer to the bill, which was overruled, the appellee answered, admitting the execution of the mortgage, the marriage and death of the mortgagee, without children, and that the debt mentioned in the mortgage was unpaid; but by way of cross-bill, setting up the following grounds of defence to the relief sought. He shows that he became guardian of Margaret A. Lucy in the year 1847, and continued to act as such until her majority, which was in the year 1854, performing various acts of duty in regard to her, and her slaves, and property which came to his hands, until the date of this mortgage, in March, 1857: that she, in the meantime, expressed her intention not to hold him to a strict settlement; but that he, being in ill health at the date of the mortgage, and having made no settlement of his trust, executed the mortgage as a security for whatever, on a future accounting, he might be found

indebted to her as guardian. He charges that, upon a proper statement of accounts between him and Margaret A. Lucy, she is indebted to him, to an amount exceeding the sum for which he is indebted to her as guardian; and the following are stated as the grounds of her liability to him: 1st. Her debts and expenses paid by him as guardian, and since she became of full age, and compensation for his services as guardian. 2d. That she is liable to him for her proportion of $500 of a judgment against the appellee, as executor of her father's estate, of which she was one of the distributees, she having received her share of the estate, in the year 1855, from the appellee, and executed her refunding-bond, with sureties, to the appellee, and that judgment having since been established as a claim against the estate. 3d. That the distributees, on receiving their shares of their father's estate from the appellee, the executor, which had been in a course of administration about twenty years, and no settlement with the Probate Court having been made, " promised to pay him a fair compensation for his services in the same ;" and the other distributees allowed him each the sum of $400 for his services ; and that "the undertaking of the said Margaret A. Lucy was to have been settled by her with the appellee, on their final settlement, which was to have been made between them amicably and individually, and to have been merely adopted by the Probate Court formally." He further alleges that, after the execution of the mortgage, he gave his note for $250 to Margaret A. Lucy, as a payment upon the mortgage debt. He states that the above matters of account, and especially the judgment against her father's estate, which was a lien on the property received by her from the estate, were claims against her estate at the time of her death ; and, therefore, denies the right of the husband, in his own right, to maintain this bill, there being no administration upon her estate. He further states that the appellant, in addition to this bill for foreclosing the mortgage, has also brought his action at law to recover the mortgage debt, and the sum claimed upon the note for $250, and has filed his petition in the Probate Court against the appellee, for a settlement of his account as guardian, and the prayer is, that the suit at law, and the proceeding in the Probate Court, be enjoined until the determination of this suit; that all those matters be consolidated with this suit, and that an account be taken in chancery, of all the matters of account embraced in the original

and cross-bill in this suit, and a decree rendered accordingly in this suit.

To this cross-bill, the appellant filed a demurrer, which was overruled, and this appeal thereupon taken.

The principal grounds of equity set up in the cross-bill, are the alleged claims of the appellee against the appellant's wife, to whose rights he has succeeded, and which are alleged to be unavailable to the appellee, in the ordinary course of legal proceedings, because he cannot sue for them at law, there being no administration of his wife's estate.

We will consider the character of these claims as shown in the cross-bill.

The first is the claim for what may be due him upon a settlement of his guardian account. It is plain that there is nothing in this, entitling the appellee to the interposition of a court of equity. The matter of that account was already depending, by the petition of the appellant calling him to account, in the Probate Court, the tribunal to which the matter appropriately belongs, and whose jurisdiction should not be interfered with for aught that is shown by the cross-bill. All that the appellee had to do, to get the benefit of anything which might be due him on his guardianship account, was to proceed promptly to settle his account in that court; which, if he had done his duty, might have been speedily done, and then he could have had the benefit of that settlement as a defence to the bill in this case, if the mortgage was executed for the purpose and under the circumstances stated in the cross-bill. His failure to make any settlement of that account in the proper court, for so great a length of time, and his continued wish to do so by transferring it to another court, and involving it in a complicated litigation, do not commend this claim very favorably to consideration in equity. And the transfer of the matter to a court of chancery, might be very unjust to the appellant, in the event that, upon taking the account, there should be found to be due from the appellee a much larger sum than that secured by the mortgage. For he would be almost necessarily delayed in the collection of that amount, by the complicated litigation involved in this cross-bill, much beyond the time in which the matter of account might be brought to a close in the Probate Court. There appears, therefore, to be no just ground for the interposition of chancery in this claim.

The second ground of indebtedness, is the liability of the wife of the appellant, for her proportion of the judgment against her father's estate. But there are two very good reasons why this claim should not prevent the enforcement of the mortgage : 1st. The appellee is indemnified by the refunding bond executed by Margaret A. Lucy, and sureties, against that claim upon the estate ; and he may have recourse upon that bond in case he is compelled to pay this judgment, and it is a proper claim against the estate. 2d. The liability upon that bond is not fixed. It could only arise upon the appellee making a final settlement of the estate, and it appearing thereby that the assets had been fully and legally administered, and that in consequence of the distribution, after a proper administration of the whole estate, there were not assets in the executor's hands wherewith to pay the claim. But it appears that the appellee has made no account of final settlement of the estate ; and whether there is any liability upon the refunding bond, depends entirely upon that settlement. To give the appellee the benefit of this claim against the wife of the appellant, would, therefore, be either to allow it without the proper settlement in the Probate Court, or to transfer the matter of the settlement of the executor's account, from the court which has proper jurisdiction of it, to another court, and to involve it in a protracted litigation.

The third claim attempted to be set up, is that founded on the compensation of the appellee for his services, as executor of the estate just mentioned. It is alleged that the appellant's wife became liable to pay the appellee $400 on this account, and the ground of the liability, as stated in the cross-bill, is, that the distributees had "promised to pay him a fair compensation for his services," and that the other distributees, not including the appellant's wife, each had allowed him that sum. According to this statement of the claim, she was not bound to allow him any particular sum for his services ; and although, if the matter had been agreed upon and finally settled between the parties, such a settlement might have been held conclusive, and as dispensing with any settlement with the Probate Court ; yet where no such final settlement is made, such an agreement as stated, must be taken to bind the distributee, to allow the executor only such compensation as he may by law be entitled to, to be fixed and allowed by the court having control of the subject,

and whose proper duty it is to determine the matter. A " fair compensation" to an executor, must be taken to be what the law allows.

Now it appears that there was no settlement made between the parties; and that the appellee has failed to settle his accounts in the Probate Court. He cannot claim an allowance except upon such settlement, and that he has entirely failed to make. It would be contrary to all principle, and contrary to the established law upon the subject, to transfer the question of commissions to be allowed to an executor, from the Probate Court to another tribunal, intimately connected as it is with the settlement of the whole estate. And certainly the great delay of the executor in this case does not, for aught stated in the cross-bill, make his case an exception to established rule. It will be time enough for him to claim the benefit of his commissions upon the estate, as a set-off to the mortgage-debt, when he shall have settled his account with the proper court, and the amount due him shall have been fixed. For aught that appears here, he can do that without delay; and then the question may be properly made by him, whether the amount adjudged to him should go in discharge of the mortgage-debt.

As to the note for $250, being in part payment of the debt embraced in the mortgage, there is no necessity for the cross-bill on that ground, or for the injunction to the suit at law. For it is matter of defence, and if established by proof, it will be available to defeat a recovery to the amount of that note, in the action at law.

Another feature of the cross-bill remains to be noticed. It is that part of it which denies the right of the appellant, to sue in virtue of his right of surviving husband of his wife, there being debts against her estate for which it is bound. This objection is founded upon the idea that the claims of the appellee, above considered, are valid debts, now subsisting against her, but which cannot be enforced because the husband is not subject to be sued for them, and there is no administration upon her estate. But this position fails for the reasons above stated, showing that the claims set up are not shown to be debts against her estate.

Finally, the main object of the cross-bill, is to withdraw the matter of settling the guardian and executor's accounts of the appellee, from the Probate Court, and to transfer it to the Court of

Chancery. This, it is well settled in this court, cannot be done. *Searles et al.* v. *Scott, Adm'r,* 14 Sm. & M.; *Neylans* v. *Burge,* Ib. If an exception could be made to this rule, there appears to be nothing in the circumstances of this case, that should make it an exception.

The decree must be reversed, the demurrer to the cross-bill sustained, and the cross-bill dismissed; and the cause is remanded for further proceedings.